IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC MCEWEN, | ) | |
|     Petitioner, | ) | Civil Action No. 18-232 Erie |
| | ) | |
| v. | ) | |
| | ) | Judge Susan Paradise Baxter |
| WARDEN, FCI MCKEAN, | ) | |
|     Respondent. | ) | |

## MEMORANDUM

Pending before the Court[1] is a petition for a writ of habeas corpus (ECF No. 4) filed by federal prisoner Eric McEwen ("Petitioner") pursuant to 28 U.S.C. § 2241. For the reasons that follow, the petition is denied.

## I.

**A.  Relevant Background**

On January 26, 2017, the United States District Court for the Middle District of Tennessee sentenced Petitioner to a 72-month term of imprisonment on his conviction of conspiracy to distribute and possess with intent to distribute Oxycodone and Oxymorphone, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. Petitioner is currently incarcerated at FCI McKean, which is located within the territorial boundaries of this Court. His projected release date is May 31, 2022.

In the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Pub.L. 103–322, Congress amended 18 U.S.C. § 3621, which governs the imprisonment of persons convicted of federal crimes. It vested the Bureau of Prisons (the "BOP") with the authority to reduce the sentences of certain inmates who successfully complete its substance abuse treatment programs, one of which is the

---

[1] On September 14, 2018, the undersigned was sworn in as a United States District Judge. This action was reassigned to this Court's docket on September 21, 2018.

1

Residential Drug Treatment Program ("RDAP"). The BOP's authority is set forth at § 3621(e)(2)(B), which provides:

> **Period of custody.**–The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). In Lopez v. Davis, 531 U.S. 230 (2001), the Supreme Court agreed with the BOP that "§ 3621(e)(2)(B) establishes two prerequisites for sentence reduction: conviction of a nonviolent offense and successful completion of drug treatment. If those prerequisites are met, [the BOP] 'may,' but also may *not*, grant early release." 531 U.S. at 239 (emphasis in original); id. at 240.

Throughout the course of an inmate's treatment, prison officials exercise broad discretion in making RDAP programming decisions. An inmate may be expelled from RDAP "because of disruptive behavior related to the program or unsatisfactory progress in treatment." 28 C.F.R. § 550.53(g)(1). "Ordinarily, inmates must be given at least one formal warning before removal from RDAP." Id., § 550.53(g)(2). But, "[a] formal warning is not necessary when the documented lack of compliance with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff and other inmates." Id.

In this case, Petitioner was enrolled in the RDAP at FCI McKean. Respondent explains that FCI McKean and the RDAP staff repeatedly engaged, warned, and disciplined him regarding his attitude and behavior. ECF No. 9 at 3. For example:

- On June 13, 2017, Petitioner refused to obey a staff nurse's order, and repeatedly knocked on a Health Services door because he "wanted to have the final say." (Resp's Ex. 2, RDAP Packet at 1, 13). A Unit Discipline Committee ("UDC") sanctioned Petitioner for that behavior, and RDAP staff provided him with a Treatment Intervention, which Petitioner signed and which amounted to a "formal warning toward expulsion" from RDAP, noting that "failure to change [his] behavior may result in removal from [RDAP]." (Id. at 1, 2, 13).

2

- On both July 12, 2017, and July 13, 2017, RDAP staff noted that Petitioner did not behave appropriately in group session (by looking "irritated" and "using sarcasm"), and that group members had to "pull him up."[2]

- On March 28, 2018, Petitioner complained to the RDAP coordinator about the lack of "programs" at FCI McKean and asked for a transfer to another facility, and then displayed a negative attitude during group session. (Id. at 5-6). As a result of his behavior during that group session, RDAP Staff gave Petitioner another written warning (his second), documenting his "poor attitude" and other behavioral shortcomings, and reminding him that "any further warnings/interventions or an incident report[ ] may result in expulsion from the program. (Id. at 7). Once again, Petitioner signed the warning. (Id. at 7-8).

Petitioner's conduct did not improve and on April 5, 2018, he was expelled from the RDAP after an investigation revealed that he had been "bringing/using contraband" into the unit, and intimidating and threatening others in the unit. (Id. at 9-10). Petitioner refused to sign the notice of expulsion (id. at 10), and then was involved in a verbal altercation with the RDAP Coordinator that resulted in another sanction from UDC. (Id. at 11, 13).

On August 31, 2018, Petitioner filed a Request for Administrative Remedy Informal Resolution Form with the BOP in which he claimed that he was "wrongfully removed and expelled from the RDAP Program for reasons unknown other than hearsay." (ECF No. 4-1 at 5). In response, the RDAP Coordinator stated that Petitioner had been expelled because his "continued presence [in the RDAP] would create an immediate and ongoing problem for staff and other inmates," and denied his Request. (Id. at 6). Petitioner's appeal of that initial response was denied and he has exhausted all available administrative remedies.

In the petition he filed with this Court pursuant to 28 U.S.C. § 2241 (ECF No. 4), Petitioner claims that the BOP unfairly expelled him from the RDAP program and that, as a result, the BOP

---

[2] Respondent explains that a "pull-up" occurs when a group facilitator receives a concern from the group about behavior exhibited by another member of the group. The facilitator then presents the concerns that have been received to the inmate, usually in the morning group session. The facilitator asks the community to provide feedback to the inmate being pulled up in order to correct the behavior. (ECF No. 9 at 3 n.3).

deprived him of receiving § 3621(e)(2)(B)'s early release benefit, in violation of his procedural and substantive due process rights and his equal protection rights. Respondent has filed his answer. (ECF No. 9). Petitioner did not file a reply. LCvR 2241(D)(2) (a petitioner may file a Reply within 30 days of the date the respondent files the Answer).

**B.     Discussion**

For federal prisoners, "[t]he 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010); see e.g., Cardona v. Bledsoe, 681 F.3d 533, 535-38 (3d Cir. 2012). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." Cardona, 681 F.3d at 535. The United States Court of Appeals for the Third Circuit Court has explained that "§ 2241 confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but *the execution of his sentence*." Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (internal quotations and citations omitted) (emphasis added). It provides, in relevant part, that "[t]he writ of habeas corpus shall not extend to a prisoner unless…[h]e is *in custody in violation of the Constitution or laws* or treaties of the United States[.]"28 U.S.C. § 2241(c)(3) (emphasis added).

Under the Administrative Procedures Act ("APA"), a federal court can set aside agency decisions that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" or "contrary to constitutional right, power, privilege, or immunity[.]" 5 U.S.C. § 706(2)(A)-(B). However, 18 U.S.C. § 3625 provides that the APA sections governing judicial review do not apply to "the making of any determination, decision, or order under this subchapter." "This subchapter," *i.e.*, Subchapter C of the Postsentence Administration statute, includes § 3621, which, as set forth above,

4

confers upon the BOP authority to administer and design drug treatment programs such as the RDAP. See 18 U.S.C. §§ 3621, 3625. Therefore, the BOP's decision to expel Petitioner from the RDAP is expressly foreclosed from judicial review under the APA. See, e.g., Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2010) ("There is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701-706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-3624.")

There are circumstances where it is appropriate for a court to review cognizable constitutional claims even when judicial review under the APA is specifically excluded by statute. 4 CHARLES H. KOCH, JR. & RICHARD MURPHY, ADMINISTRATIVE LAW AND PRACTICE § 11.11 (3d ed.), Westlaw (database updated Feb. 2019); Webster v. Doe, 486 U.S. 592 (1988). To the extent that such a circumstance is present in this case, Petitioner's constitutional claims are denied because they clearly have no merit.

Petitioner contends that the decision to expel him from the RDAP violated his procedural and substantive due process rights. He did not identify a sufficient liberty interest affected by his RDAP expulsion to support a procedural due process claim. See e.g., Reeb, 636 F.3d at 1229 n.4 (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) (a prisoner does not have a constitutional right to be released prior to the expiration of a valid sentence)); Richardson v. Joslin, 501 F.3d 415, 419 (5th Cir. 2007) ("not only does the Due Process Clause not create a protected liberty interest, neither does any statute or regulation. The grant of discretion to the BOP in § 3621(e)(2)(B) indicates that no entitlement and, hence, no liberty interest, was created."). To prevail on his substantive due process claim, Petitioner must establish that the decision he is challenging shocks the conscience. See, e.g., Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010); Evans v. Secretary, Pa. Dept. of Corrections, 645 F.3d 650, 659 (3d Cir. 2011); Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir.

2002). He did not direct the Court to any factor relied upon to expel him from the RDAP that could be described as "conscience shocking." Finally, to prevail on an equal protection claim Petitioner must prove "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" Mack v. Warden Loretto FCI, 839 F.3d 286, 205 (3d Cir. 2016). He did not meet his burden and, therefore, there was no violation of his constitutional right to equal protection.

## II.

For the foregoing reasons, the petition for a writ of habeas corpus is denied.[3] An appropriate Order follows.

/s/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
United States District Judge

Dated: May 28, 2019

---

[3] 28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the dismissal of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by Gonzalez v. Thaler, 565 U.S. 134 (2012).